IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JUAN VALENTÍN-PEREZ,

**Plaintiff**

v.

NEW PROGRESSIVE PARTY, *et al*,

**Defendants**

CIVIL NO. 11-2155 (JAG)

OPINION AND ORDER

On February 9, 2012, the Court ordered the parties to submit legal briefs addressing the question of whether this Court has jurisdiction over plaintiff's complaint. (Docket No. 22). Both parties timely filed their memoranda. After assessing the parties' respective positions on this issue, the Court determines that it does not have jurisdiction and accordingly dismisses this case without prejudice.

BACKGROUND

Political parties and citizenry alike are gearing up for the upcoming general elections in Puerto Rico, to be held in November of this year. With respect to the public office of mayor of the municipality of Moca, the incumbent mayor (an NPP member) has already announced his intention of running for re-election. (Id., ¶ 3.3). If another qualified candidate wishes to

Civil No. 11-2155 (JAG)                                            2

run for this position, primaries will have to be held in order
to determine who will carry the NPP banner in the November
general elections. (Id.)

On October 11, 2011, plaintiff Juan Valentín-Perez
("Valentín" or "plaintiff") filed a candidacy request to be
considered as one of the New Progressive Party's ("NPP")
candidates for mayor of Moca. (Docket No. 1, ¶ 3.1). According
to the complaint, Valentín's petition was eventually rejected by
the NPP's Candidate Evaluation Committee (the "Committee"). On
October 26, 2011, the General Secretary of the NPP, Omar Negron-
Judice, notified Valentín of the Committee's decision. (Docket
No. 1, ¶ 3.5). Valentín timely appealed his disqualification to
the NPP's Directorate, which "rubberstamped the Evaluation
Committee's decision with no analysis whatsoever." (Docket No.
1, ¶ 3.15). Subsequently, Valentín sought review of the NPP's
decision in the local courts. (Docket No 24, p.4; Docket No. 25,
p.3).[1] As far as the Court can gather, the local court dismissed
the complaint for lack of jurisdiction. (Docket No 24, p.4;
Docket No. 25, p.3). Valentín appealed this decision and states
in his brief that it will "very likely be reversed." (Docket No.

---

[1] This is not mentioned in the complaint. However, both parties
later allude to plaintiff's state court appeal in their briefs.

Civil No. 11-2155 (JAG)                                                3

24, p.4). As of this moment, the Court understands that the local appeals court has yet to issue an opinion on this matter.

A month after filing his suit in state court, Valentín filed the instant complaint alleging various constitutional violations under the Civil Rights Act, 42 U.S.C. § 1983. Defendants failed to answer and were found in default. (Docket Nos. 9, 10). Two days later, defendants moved the Court to set aside default, arguing that the summonses were defective and did not comply with Fed. R. Civ. P. 4. (Docket No. 11). Plaintiff timely opposed this motion. However, shortly after these motions were filed, this Court issued an Opinion and Order in <u>Gonzalez-Cancel v. Partido Nuevo Progresista</u>, Civil No. 11-2149 (JAG), dismissing that case for lack of subject matter jurisdiction. Given that the instant complaint presents similar questions of fact and law as <u>Gonzalez-Cancel</u>, the Court focuses its attention on whether it has explicit authority to decide this case rather than ruling upon the pending motion to set aside default. <u>See Irving v. United States</u>, 162 F.3d 154, 160 (1st Cir. 1998) (en banc)).

**STANDARD OF REVIEW**

The Court is tasked with determining if there is jurisdiction over the present complaint. As outlined below, this analysis depends on whether the complaint states a claim upon

Civil No. 11-2155 (JAG)                                                4

which relief may be granted. Thus, the Court considers that the appropriate standard of review is that required by the Federal Rules of Civil Procedure to evaluate a motion to dismiss for failure to state a claim under Rule 12(b)(6).

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007); see also <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).

In <u>Ocasio-Hernández v. Fortuño Burset</u>, 640 F.3d 1 (1st Cir. 2011), the First Circuit distilled from <u>Twombly</u> and <u>Iqbal</u> a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." <u>Ocasio-Hernández</u>, 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining non-conclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable." *Id.* Finally, the court must assess whether

the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." *Id.*

## ANALYSIS

Under § 1983, this Court has subject matter jurisdiction if plaintiff's complaint "limns a set of facts that bespeaks the violation of a constitutionally guaranteed right." <u>Bonas v. Town of North Smithfield</u>, 265 F.3d 69, 73-74 (1st Cir. 2004). In spite of this, the First Circuit has adamantly warned that federal courts should abstain from injecting themselves "into the midst of every local electoral dispute." <u>Bonas</u>, 265 F.3d at 74; <u>see also</u> <u>Griffin v. Burns</u>, 570 F.2d 1065 (1st Cir. 1978). Rather, federal intervention is warranted only in those long-odds cases which do not "embroil the federal courts in the detailed administration" of local elections. <u>Bonas</u>, 265 F.3d at 75-76. This holds true even if the court is vested with subject matter jurisdiction under § 1983. See <u>Rossello-Gonzalez v. Calderon-Serra</u>, 398 F.3d 15-16 (1st Cir. 2004) (finding "no doubt that [plaintiff's] complaint … presents a colorable claim under § 1983," but holding that the district court's exercise of jurisdiction was inappropriate because it ran contrary to the general rule of non-intervention in state electoral disputes).[2]

---

[2] Concurring with the result, Judge Howard phrased the jurisdictional inquiry in a slightly different way:

Civil No. 11-2155 (JAG)                                              6

Thus, in the context of an electoral dispute, a federal court may only intervene when the complaint presents a colorable claim under § 1983 *and* it falls within one of the exceptions to the general federal policy of non-intervention.

Whether plaintiff has a colorable claim under § 1983

Section 1983 provides a right of action against those who violate constitutional rights. Inyo Cnty., Cal. v. Paiute-Shoshone Indians, 538 U.S. 701, 708 (2003). To state a claim under § 1983, Valentín must plausibly plead (1) that he was deprived of a constitutional right; (2) that there is a causal link between defendant's conduct and the constitutional violation; and (3) "state action." Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009) (citing 42 U.S.C. § 1983). Plaintiff's § 1983 action charges the NPP with violations of his constitutional rights under the First and Fourteenth Amendments of the Constitution. The essence of defendant's defense is that the denial of plaintiff's candidacy petition did not deprive him of any cognizable constitutional right.

---

There is no question, of course, that the district court has subject matter jurisdiction of a federal civil rights claim pleaded under 42 U.S.C. § 1983. The issue is whether the pleaded federal claim is justiciable. This question is not a matter of discretion; it is an issue of law. See Bonas v. Town of N. Smithfield, 265 F.3d 69, 73-75 (1st Cir.2001). And it is an issue of law that implicates the court's "jurisdiction" only in the sense that justiciability is regarded as a jurisdictional doctrine. *See id.* Rossello-Gonzalez, 398 F.3d at 20.

Civil No. 11-2155 (JAG)                                             7

1. <u>First Amendment</u>

The complaint asserts that the NPP's allegedly arbitrary decision to deny the candidacy petition infringed upon Valentín's right to "associate to the party of his choice, and to run for office for said party," pursuant to the First Amendment. (Docket No. 1, ¶ 3.17). Defendant counters that the Constitution offers no such protection to a person seeking a political party's nomination.

"A political party has a First Amendment right to limit its membership as it wishes, and to choose a candidate-selection process that will in its view produce the nominee who best represents its political platform." <u>New York State Bd. of Elections v. Lopez-Torres</u>, 552 U.S. 196, 202 (2008) (citing <u>California Democratic Party v. Jones</u>, 530 U.S. 567, 574–575 (2000)). However, this right does not extend to individual candidates so as to confer them any associational right to join, and have influence in, a political party. <u>Id.</u> In fact, the Supreme Court has flatly stated that "[n]one of [its] cases establishes an individual's constitutional right to have a 'fair shot' at winning the party's nomination." <u>Id.</u> at 205. It thus follows that in denying Valentín's petition, the NPP could not have infringed plaintiff's First Amendment rights because they are non-existent in this context.

Civil No. 11-2155 (JAG)                                                              8

    2. Fourteenth Amendment

    Plaintiff later acknowledges in his brief that "[t]here is
no such thing as a constitutional right to obtain a political
party's nomination." (Docket No. 24, p.8). Nevertheless, he
argues that states may legislate the requirements to obtain
those nominations. The fact that states have a limited
prescriptive power to regulate party primaries is, as the
Supreme Court puts it, "too plain for argument." Lopez-Torres,
552 U.S. at 203.[3] Valentín claims that those processes must be
applied in a consistent and fair manner, as required by the
Constitution. (Docket No. 24, p.8). The Court construes this to
mean that the NPP violated plaintiff's right to procedural due
process under the Fourteenth Amendment in denying Valentín's
petition for arbitrary reasons. On the basis of the facts
alleged in the complaint, however, there is little to indicate
that Valentín has suffered a denial of procedural due process.
Plaintiff's petition was reviewed by the Committee, later by the
Directorate, (Docket No 24, p.4; Docket No. 25, p.3); and is now
pending review before the local courts. (Docket No 24, p.4;

---

[3] "But to say that the State can [impose certain restrictions in
the party-candidate selection process] is a far cry from saying
that the Constitution demands it." Lopez-Torres, 552 U.S. at
205.

Civil No. 11-2155 (JAG)                                            9

Docket No. 25, p.3). Thus, as defendant puts it, plaintiff was
afforded all due process in the evaluation of his petition.

The complaint also claims violations of the Fourteenth
Amendment's Equal Protection clause. (Id., ¶ 3.19). On this
point, the complaint simply alleges that the arbitrary denial of
Valentín's candidacy application somehow limits the choices of
Moca voters. (Docket No. 1, ¶ 3.19). As such, "defendants have
created a suspect classification without any compelling interest
behind it." (Id.). Naturally, this classification would affect
only those Moca voters that support Valentín. Defendant argues,
and the Court agrees, that this subset of voters is not subject
to any disparate treatment, since they may still exercise their
right of suffrage through a write-in vote, or by voting for
Valentín as an independent candidate. Thus, this argument fails
to establish a plausible Equal Protection violation.

In his brief on jurisdiction, plaintiff raises another
Equal Protection argument couched on a class-of-one theory. This
theory requires plaintiff to allege that he "has been
intentionally treated differently from others similarly situated
and that there is no rational basis for the difference in
treatment." See Vill. of Willowbrook v. Olech, 528 U.S. 562, 564
(2000) (per curiam). The plaintiff must also show that the
disparate treatment was "based on a malicious or bad faith

intent to injure." <u>Buchanan v. Maine</u>, 469 F.3d 158, 178 (1st Cir. 2006). The relevant caselaw places the burden of proof upon the plaintiff "in class-of-one cases to show such identity of entities and circumstances to a high degree." <u>Rectrix Aerodrome Centers v. Barnstable</u>, 610 F.3d 8, 16 (1st Cir. 2010). Though plaintiff attempts to flesh out this argument in his brief, the complaint itself is devoid of facts showing that Valentín was treated differently in the qualifications process when compared with other potential candidates. <u>See</u> <u>Mihos v. Swift</u>, 358 F.3d 91, 99 (1st Cir. 2004) ("When a motion to dismiss is based on the complaint …, the facts alleged in the complaint control"). Finally, the Court considers that this argument is premature because it presumes that the NPP indeed erred in applying Puerto Rico electoral law to Valentín's candidacy request. This matter, as discussed further below, is one that is best left for state courts to decide.

Finally, the complaint contends that the NPP's allegedly arbitrary decision is conscience-shocking to the point of making out a substantive due process violation. (<u>Id.</u>, ¶ 3.18). The Court finds otherwise. "In order to establish a substantive due process claim, the plaintiff must first show a deprivation of a protected interest in life, liberty, or property. It is not enough to claim the governmental action shocked the conscience."

Rivera v. Rhode Island, 402 F.3d 27, 33-34 (1st Cir. 2005) (citations omitted). "A substantive due process claim requires allegations that the government conduct was, in and of itself, inherently impermissible irrespective of the availability of remedial or protective procedures." Maymí v. Puerto Rico Ports Auth., 515 F.3d 20, 30 (1st Cir. 2008) (citation omitted). "The state conduct itself must be so brutal, demeaning, and harmful that it is shocking to the conscience." Id.

Fundamentally, plaintiff's grievance is that the NPP made the wrong call in assessing his candidacy petition. This is far removed from the type of brutal and shocking conduct that is the hallmark of a substantive due process violation. Moreover, as discussed below, substantive due process violations in the context of elections usually arise when the entirety of the electoral process itself "reaches the point of patent and fundamental unfairness." Griffin, 570 F.2d at 1077. That is not the case here.

### The rule of non-intervention

Though the complaint fails to state a claim under § 1983, the Court also finds that plaintiff's claims do not fit squarely within one of the "isthmian exceptions" to the federal policy of non-intervention. Bonas, 265 F.3d at 74. Thus, even if the complaint vested us with jurisdiction by properly stating a

claim under § 1983, the Court would still find reason to decline plaintiff's invitation to intervene.

Courts have carved out two exceptions to the strong federal policy of non-intervention in local electoral matters. These exceptions are not the norm. See Griffin, 570 F.2d at 1080 (characterizing as "exceptional" those cases which merit federal relief); Bonas, 265 F.3d at 75 ("[t]his case is the long-odds exception to the general rule of non-intervention"); see also Duncan v. Poythress, 657 F.2d 691, 702 (5th Cir. Unit B Sept. 1981)(noting that denials of substantive due process in this context occur even less frequently than violations of equal protection). If a Court finds that neither exception is met, it must decline to exercise jurisdiction. See Rossello-Gonzalez, 398 F.3d 1.

According to the First Circuit, "the most developed[] justification … exists when a discrete group of voters suffers a denial of equal protection." Bonas, 265 F.3d at 74 (citing Reynolds v. Sims, 377 U.S. at 558). We found above that plaintiff's complaint failed to make out an Equal Protection claim. Consequently, plaintiff's case does not fit within this exception.

The second exception activates when the "election process itself reaches the point of patent and fundamental unfairness,"

Civil No. 11-2155 (JAG)                                         13

thus depriving citizens of substantive due process. <u>Bonas</u>, 265
F.3d at 74; <u>see also</u> <u>Griffin v. Burns</u>, 570 F.2d 1065 (1st Cir.
1978). In <u>Griffin</u>, for example, Rhode Island state officials,
relying on a state supreme court decision, annulled absentee and
shut-in ballots after they had been cast. <u>Bonas</u>, 265 F.3d at 74.
The First Circuit held that this decision was fundamentally
unfair, since it "changed the rules at the end of the game" and
excluded a whole section of votes that would have been outcome-
determinative. <u>Id.</u>; see also <u>Marks v. Stinson</u>, 19 F.3d 873, 888-
89 (3d Cir. 1994)(citing <u>Griffin</u> and decertifying the winner of
a local election in the face of massive absentee ballot fraud).
As this Court noted in <u>Gonzalez-Cancel</u>, these situations justify
the exercise of federal jurisdiction because of the enormity and
broad scope of the underlying constitutional violation.

In this regard, the Court finds little to distinguish the
present complaint from the one in <u>Gonzalez-Cancel</u>. The NPP's
decision, even if left unchecked, simply does not result in an
extensive disenfranchisement of the electorate as a whole.
Though Valentín may ultimately be foreclosed from carrying the
NPP banner in the November 2012 elections, his supporters may
still vote for him as a write-in or as an independent candidate.
This is clearly not one of "those few cases in which organic
failures in a state or local election process threaten to work

Civil No. 11-2155 (JAG)                                         14

patent and fundamental unfairness," making federal intervention
necessary. <u>Bonas</u>, 265 F.3d at 74. Thus, the Court holds that
plaintiff's complaint does not establish the type of "broad-
gauge unfairness" that warrants the exercise of federal
jurisdiction.

Alternatively, plaintiff posits that the Court's analysis
under either of the exceptions to the non-intervention rule is
inapplicable to his situation. To that effect, plaintiff
advances that the "comity and prudence concerns raised in
<u>Griffin</u> and <u>Bonas</u> are conspicuously absent in the instant case."
(Docket No. 24, p.5). Plaintiff also argues that this Court is
not being required to resolve an electoral dispute but rather a
"run-of-the-mill federal civil rights suit," akin to that of a
public employee fired for political reasons. (<u>Id.</u>, p.9) The
Court disagrees on both points.

The complaint contends that the Puerto Rico Electoral Code
establishes the statutory prerequisites for a person to run for
office for his political party. (Docket No. 1, ¶ 3.18).
Consequently, the determination of whether a candidate is
qualified or not is purely a matter of state electoral law. And
"[e]lection law, as it pertains to state and local elections, is
for the most part a preserve that lies within the exclusive
competence of the state courts." <u>Bonas</u>, 265 F.3d at 74 (citing

Civil No. 11-2155 (JAG)                                              15

Powell v. Power, 436 F.2d 84, 86 (2d Cir. 1970)). Moreover, though the complaint asserts that the NPP erred in applying the correct legal standard to his candidacy request, such an allegation is but a conclusion of law. Thus, it is not entitled to a presumption of truth. See Ocasio-Hernández v. Fortuño Burset, 640 F.3d 1, 12 (1st Cir. 2011). The issue of whether the NPP erred in denying plaintiff's petition is, as defendant argues, "a state electoral issue that requires interpretation and resolution by the Puerto Rico courts." (Docket No. 25, p.13).

Plaintiff's comparison of his case with other "run-of-the-mill" civil rights cases is not persuasive. Furthermore, "local election irregularities, including even claims of official misconduct, do not usually rise to the level of constitutional violations where adequate state corrective procedures exist." Griffin, 570 F.2d at 1077. For the same reasons, we find that the federalism concerns that underlie the decisions in Bonas, Griffin, and other related cases are best served by dismissing this case and allowing the state electoral machinery to run its course.

Civil No. 11-2155 (JAG)                                    16

**CONCLUSION**

In light of the above, the Court finds that it lacks jurisdiction to attend to plaintiff's complaint. Accordingly, the Court dismisses the complaint without prejudice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 13th day of March, 2012.


                                        S/ Jay A. Garcia-Gregory
                                        JAY A. GARCIA-GREGORY
                                        United States District Judge